UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| SAMUEL GONZALEZ ISABEL, | Case No. 5:26-cv-01931-DTB |
| Petitioner, | **ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| ERNESTO SANTA CRUZ, JR., et al, | |
| Respondents. | |

**I.**

**PROCEEDINGS**

On April 17, 2026, petitioner Samuel Gonzalez Isabel ("Petitioner"), through counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"). (Docket No. 1). Petitioner also filed a Motion for Preliminary Injunction (Docket No. 3), which the Court denied on April 22, 2026 (Docket No. 8). In accordance with the General Order 26-05 (Docket No. 6), on April 17, 2026, Respondents filed an Answer to the Petition on April 24, 2026 (Docket No. 10).

///

///

1

In their Answer, Respondents acknowledge that Petitioner appears to be a member of the bond-eligible class of detainees certified in <u>Maldonado-Bautista v. Santacruz</u>, Case No. 5:25-cv-01873-SSS-BFM ("<u>Bautista</u>"), and that therefore Petitioner is entitled to a bond hearing pursuant to the judgment in <u>Bautista</u>. (Answer at 2 ["Accordingly, Respondents acknowledge that Petitioner's claims in this action appears to be subject to the *Bautista* judgment, the order enforcing the same, and to any applicable appellate proceedings relating to it."]). In their Answer, Respondents also state that "[w]hile Petitioner seeks immediate release, to the extent Petitioner would be entitled to any remedy, at most it would be ordering a bond hearing to be held before an Immigration Judge under Section []1226(a)." (<u>Id.</u> at 3).

Petitioner filed his Reply on April 27, 2026 (Docket No. 12), stating, *inter alia*, that he is not requesting a bond hearing as alternative relief. Rather, in light of the underlying facts, Petitioner is seeking release from custody.

Thus, this matter is now ready for decision. For the reasons set forth herein, the Court finds that habeas relief is warranted and, therefore, grants the Petition.

## II.

## BACKGROUND

Petitioner is 44 years old and has resided in the United States for over 25 years, having entered the country in 2001. (Docket No. 1 at 2).[1] He and his wife have three children, all of whom are United States citizens, the youngest of whom is seven (7) years old. (<u>Id.</u>).

While in the United States, Petitioner has actively sought lawful status. He filed Form I-589 Application for Asylum and for Withholding of Removal in 2016. In May 2019, he filed EOIR 42B Application for Cancellation of Removal and

---

[1] For the parties' pleadings, the Court cites to the CM/ECF pagination at the top of each page.

Adjustment of Status for Certain Nonpermanent Resident and I-485 Application to Register Permanent Resident Status.  In 2022, Petitioner's applications were dismissed and terminated.  (Id.; Declaration of Samuel Isabel ["Pet. Decl."], at ¶ 3).

On March 11, 2019, DHS served Petitioner with a Notice to Appear (NTA), alleging that he is removable under INA § 212(a)(6)(A)(i), codified at 8 U.S.C. 1182(a)(6)(A)(i), and ordering him to appear before an Immigration Judge ("IJ") on April 19, 2019.  At the time Petitioner was served with the NTA, Petitioner was not detained but was released with no conditions.  (Id.).

On or about September 23, 2025, Petitioner was charged with misdemeanor assault pursuant to California Penal Code § 243(E)(1).  Relying on his public defender's advice, Petitioner pleaded guilty as part of a plea bargain.  (Id. at 3). However, he was not made aware that this plea would result in adverse immigration consequences such as removability.  (Id.).  Petitioner thereafter retained private counsel, and on March 3, 2026, counsel filed a Motion to Reopen Case and Vacate Conviction, due to the failure to inquire as to Petitioner's immigration status.  (Id.). This motion is currently pending.

On November 14, 2025, Petitioner was arrested by immigration agents immediately following a criminal court hearing in Rancho Cucamonga.  Petitioner was transported to the San Bernardino ICE Office where he was fingerprinted and pressured to sign a document, which he refused to do, stating he needed his attorney to review it first.  (Id. at 4).  Officers used derogatory and harassing language to pressure Petitioner to sign the document, including "fat ass," "You have to sign, if not, I am going to make you sign," "F-word," and "ass hole," among others.  (Id.).

Also, on November 14, 2025, Petitioner was purportedly served with a new NTA, alleging he is removable under INA § 212(a)(6)(A)(i), codified at 8 U.S.C. § 1182(a)(6)(A)(i).  (Id.).  Petitioner disputes the validity of service, as he does not

recall signing or receiving the NTA, and he believes the signature on the document is not his. (Id.).

On November 14, 2025, Petitioner was transferred to the ICE Los Angeles Office and then to Adelanto Detention Facility. (Id. at 5).

Prior to his arrest and detention, or thereafter, Petitioner did not receive and/or sign any other document and/or notice from ICE regarding the revocation of his long-term non-detained status or a custody determination. (Id.).

Petitioner alleges that his current detention is based on DHS' determination that he is subject to mandatory detention pursuant to a new precedential decision by the Board of Immigration Appeals, Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025). (Id.). This decision deems individuals like Petitioner, who have long resided in the interior of the country after entering without admission, as "applicants for admission" subject to mandatory detention. (Id.).

In January 2026, while Petitioner was in ICE custody, Petitioner filed a renewed asylum application, and on March 2, 2026, the Adelanto Immigration Court denied his asylum application. (Id.). A Notice of Appeal was timely filed with the Board of Immigration Appeals (BIA) on March 12, 2026. (Id.). This case is currently pending.

## III.

## LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner

who demonstrates to be in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws.  28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

## IV.

## DISCUSSION

As noted, although Respondents assert that Petitioner appears to be a member of the bond-eligible class in Bautista, which is certified in this District, Petitioner does not seek a bond hearing, and instead seeks release on the basis that his arrest and detention violates the Immigration and Nationality Act ('INC"), the Due Process Clause of the Fifth Amendment (both procedurally and substantively), and also the Fourth Amendment of the Constitution.

Accordingly, the Court evaluates Petitioner's claim that his arrest and detention violates his right to Procedural Due Process under the Fifth Amendment.

### 1.    **Procedural Due Process.**

The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V.  All persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," are entitled to protection under this provision of the Constitution. Zadvydas, 533 U.S. at 693. "Freedom from imprisonment—

5

from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." Id. at 690; see also United States v. Salerno, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Garro Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases).

In Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court recognized that the decision to release a criminal defendant from custody on parole creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. Id. at 482. This principle has been recognized by courts in the Ninth Circuit as extending to individuals subject to immigration removal proceedings. Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond."); accord, Garro Pinchi, 792 F. Supp. 3d at 1032 (collecting cases for the proposition that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody").

Generally, the Due Process Clause "requires some kind of a hearing *before* the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990) (emphasis in original). In Mathews v. Eldride, 424 U.S. 319 (1976), the Supreme Court established three factors for a court to consider for purposes of determining what process is constitutionally sufficient to protect a liberty

6

interest:  The private interest that will be affected by the official action; the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.  Id. at 335; see Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying Mathews to due process challenge to immigration detention, noting that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); López v. Wofford, Case No. 1:25-cv-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) (collecting cases extending Mathews "to the context of immigration detention").

Thus, the Court considers the Mathews factors as applied to Petitioner's claim.

### a.    Private Interest

Here, Petitioner has resided in the United States for more than 25 years, raising his three children and contributing to his community s a productive member of society.  He is married, has been gainfully employed, and has sought lawful status. In 2019, after being served with a NTA, he was released without conditions.

Accordingly, Petitioner's liberty interest in remaining out of custody is protected under the Due Process Clause.  See e.g., Cruz v. Lyons, Case No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *3 (C.D. Cal, Nov. 6, 2025) (granting application for temporary restraining order and finding the petitioner had a protectable liberty interest in remaining on supervised immigration release); C.A.R.V. v. Wofford, Case No. 1:25-CV-01395 JLT SKO, 2025 WL 3059549, at *10 (E.D. Cal. Nov. 1, 2025) (finding the petitioner had a

constitutionally protected liberty interest in remaining out of ICE custody based on the "approximately four years on parole" preceding his re-detention).

Pursuant to the holding in Mathews, Petitioner should have been afforded a hearing prior to being detained following his release without conditions in 2019. Petitioner has a substantial private interest in remaining free from detention on supervision, living in his home, engaging in lawful employment and generally participating in the community, all while out of custody.  See C.A.R.V., 2025 WL 3059549, at *10 ("As to private interest, during his approximately four years on parole, C.A.R.V. obtained permission to work, pursued gainful employment, and built a relationship with his fiancé and many others in his community. . . . Petitioner has a substantial private interest in being out of custody and his detention denies him that liberty interest."); Garro Pinchi, 792 F. Supp. 3d at 1034-35 ("Ms. Garro Pinchi justifiably relied on the government's implied promise in obtaining employment, taking on financial responsibility for her family members, and developing community relationships.  The more than two years that she has spent out of custody since ICE initially released her have only heightened her liberty interest in remaining out of detention."); Manzanarez v. Bondi, Case No. 1:25-cv-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding that petitioner had a private interest in remaining free from detention where "he was released on his own recognizance for over two years and complied with his [order of release on recognizance] conditions during that time"); López, 2025 WL 2959319, at *6 ("Petitioner had been out of custody for nearly four years, and during that time, began a life in the United States, living with her partner and complying with the terms of her release.  Her detention denies her that freedom.").

/ / /

/ / /

b.      Risk of Erroneous Deprivation

The absence of a pre-detention hearing under these circumstances presents an unacceptable risk that the Government would erroneously deprive Petitioner of his liberty interest. Civil immigration detention is permissible only to prevent flight or reduce the risk of danger to the community. Zadvydas, 533 U.S. at 690-91. The risk of a wrongful deprivation is particularly high here given the evidence that Petitioner was released without conditions in 2019. Respondent has adduced no evidence – or even argued – that Petitioner poses a risk of flight or a danger to the community. The government clearly did not believe Petitioner a risk of flight or a danger to the community when he was released without conditions in 2019, otherwise, they would not have released him. Cf. e.g., Pablo Sequen v. Albarran, Case No. 25-cv-06487-PCP, – F. Supp. 3d –, 2025 WL 2935630, at *11 (N.D. Cal. Oct. 15, 2025); Singh v. Andrews, Case No. 1:25-cv-00801-KES-SKO (HC), 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025). As noted, ICE has *already determined* that Petitioner does not pose a flight risk or danger to his community when it released him without conditions in 2019. There is no evidence indicating that this decision was erroneous or should otherwise be reassessed.

Considering the second Mathews factor, the Court finds that it also weighs in favor of finding a procedural due process violation, since "[t]here is an unacceptably high risk that the Government would erroneously deprive – or already has erroneously deprived – Petitioner of [his] liberty interest absent a pre-detention hearing. Cruz, 2025 WL 4051129, at *4.

/ / /

/ / /

/ / /

9

c.      Government Interest

As for the third Mathews factor, "as many other courts have recognized, there is no meaningful countervailing Government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." Cruz, 2025 WL 4051129, at *4 (collecting cases).  Here, the Government has made no argument as to why Petitioner should be detained.  Moreover, Petitioner was released without conditions since 2019.  "[T]he Government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lessor bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017). Moreover, "any fiscal or administrative burden on the additional procedural safeguard of a hearing before neutral adjudicator imposes on the Government is at most minimal'[.]" Sun v. Santa Cruz, Case No. 5:25-cv-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted).  There are no facts in the instant record which would support a finding that the Government's decision in 2019 to release Petitioner on supervision was made in error.

Accordingly, the Court finds that there is a great risk that the lack of a pre-detention process – a hearing  to determine whether Petitioner, in  fact, presents  a risk of flight or danger to the community – has resulted in his unnecessary detention.

Moreover, even if Respondents had met their burden to show the government had the authority to re-detain Petitioner, such proof would not resolve whether the Government could detain him without regard to the Due Process Clause's protections.  The Constitution's guarantee of due process may require a hearing even where a congressional statute may not. Garcia Barrera v. Andrews, Case No. 1:25-cv-01006-JLT-SAB, 2025 WL 2420068, at *9 (E.D. Cal. Aug. 21,

10

2025) (citing Young v. Harper, 520 U.S. 143, 147-49 (1997), and Morrissey, 408 U.S. at 482); see also Marbury v. Madison, 5 U.S. 137, 180 (1803) ("[A] law repugnant to the constitution is void . . .."). Respondent has offered no reason – much less any compelling reason – as to why the Government should be able to detain Petitioner, who has developed a significant liberty interest during more than six years on release and likely poses no danger to his community or risk of flight, without first providing him with notice and opportunity for a hearing before a neutral adjudicator.

In conclusion, the Court finds that the Government's detention of Petitioner on November 14, 2025, without adequate predetention process, when he had previously been released on supervision and generally had been in compliance with his conditional release, violated his right to procedural due process under the Fifth Amendment, requiring his immediate release.

If the Government seeks to re-detain Petitioner, Petitioner must be provided "some kind of hearing *before* the state deprives [him] of [his] liberty." Zinermon, 494 U.S. at 127 (emphasis in original). Further, such hearing must be before a neutral arbiter in which the Government bears the burden of proving that Petitioner presents a risk of flight or a danger to the community. Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011).

Accordingly, the Petition is GRANTED, and a writ shall issue ordering Petitioner's immediate release from custody.

///
///
///
///
///

11

## IV.

## CONCLUSION

IT THEREFORE IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Respondents to immediately release Petitioner from custody, and return all property confiscated from him during his arrest and processing into detention; (3) enjoining Respondents and their officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with them, from redetaining Petitioner without notice and a predetention hearing before a neutral arbiter at which the government bears the burden of proving that Petitioner is a flight risk or danger to the community; and (4) Respondents shall file a status report within two (2) business days to confirm that Petitioner has been released from custody pursuant to this Order.

DATED:  May 11, 2026

_____
DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE

12